IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 04-Z1999-ZLW-PAC

THOMAS FOLSOM, a Virginia resident, an individual,

Plaintiff,

v.

GLENN K. BEATON, a Colorado resident, an individual

Defendants.

## EXHIBIT A-32 TO DEFENDANT BEATON'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Title of Document being filed "under seal":  Exhibit A-32

Attorney Filing the document:          Frank W. Visciano, Esq.
                                        Luis A. Toro, Esq.
                                        SENN VISCIANO KIRSCHENBAUM MERRICK, P.C.
                                        1801 California Street, Suite 4300
                                        Denver, CO 80202
                                        Telephone (303) 298-1122
                                        Facsimile (303) 296-9101

This document is being filed in connection with our Motion for Leave to File Under Seal and pursuant to the Court's January 10, 2005 minute order, a party wishing to file with the Court a document containing "Confidential Information," as that term is defined in Paragraph 2 of the Stipulation and Protective Order that the Court approved with a modification, must file with the Court a motion for leave to file such a document under seal.

DISTRICT COURT, DOUGLAS COUNTY, COLORADO

Case No. 84 DR 147, Division 1

---

DEPOSITION OF THOMAS FOLSOM

---

In re the Marriage of:

THOMAS C. FOLSOM,

        Petitioner,

and

SUSAN V. FOLSOM,

        Co-Petitioner.

---

PURSUANT TO NOTICE and the Colorado Rules of Civil Procedure, the above-entitled deposition was taken on behalf of Co-Petitioner at 8101 East Prentice Avenue, Suite 406, Englewood, Colorado, on Tuesday, May 13, 1997, at 10:47 a.m., before Mary Lou Becerra-Eick, Registered Professional Reporter, Certified Shorthand Reporter and Notary Public within Colorado.



COPY

Defendant's Exhibit A-32



Patterson Reporting & Video Service, Inc.

Waterpark III • 2550 South Parker Road • Suite 202 • Aurora, Colorado 80014
(303) 696-7680 • Fax: (303) 696-7675
e-mail: 104024,1177@compuserve.com

Folsom-1437

1        Q.    -- did you earn W-2 income in calendar
2   year 1996?
3        A.    Yes, I did.
4        Q.    Where did you earn the W-2 income in
5   1996? what source?
6        A.    That would have been from Beaton &
7   Folsom.
8        Q.    Those were payments made and paid to you
9   after you left the firm; is that correct?
10       A.    They're payments made from Beaton &
11  Folsom as it was winding down.  I haven't left Beaton
12  & Folsom.  Beaton & Folsom hasn't been officially
13  dissolved yet.  But they're W-2 payments from Beaton
14  & Folsom.
15       Q.    Beaton & Folsom, I take it, was a
16  corporation; is that correct?
17       A.    That's correct.
18       Q.    Was it a sub S corporation?
19       A.    I don't know.
20       Q.    When you received compensation from
21  Beaton & Folsom, you received it as an employee
22  and/or a shareholder; is that correct?
23       A.    That's correct.
24       Q.    And it was always W-2 income, correct?
25       A.    That's right.

1   it.

2          Q.   And standing here today, that's the only

3   fee that you anticipate receiving in 1997?

4          A.   That is the only one that I anticipate.

5   Glenn Beaton has a detailed view of what is going on,

6   but this is the only one that I'm aware of.  We are

7   now a year and a half after we have stopped doing any

8   ongoing work, and my instinct tells me that absent

9   some contingencies -- and there are some

10  contingencies and such -- but absent things like

11  that, it sure seems to be kind of cold for

12  collectibles now.

13         Q.   Do you have personal knowledge of any

14  case -- that wasn't necessarily one that you worked

15  on -- that one of your former shareholders or

16  partners thinks might come in in a sizable amount?

17         A.   Well, there is a contingency fee case

18  which has not yet been decided, but my partner Glenn

19  Beaton is working on it.  I can't think of any other

20  amount, either sizable or not, that might come in.

21         Q.   The contingency case that he worked on,

22  the litigation has concluded; is that correct?

23         A.   That's correct.

24         Q.   Has a decision been rendered?

25         A.   No.  At least as of yesterday, no.

```
 1        Q.   So the status of that case is:  The trial
 2   is over and the litigants -- their attorneys -- are
 3   awaiting a decision from the judge?
 4        A.   That's correct.
 5        Q.   In terms of your arrangements with your
 6   former shareholders, do you simply distribute the
 7   money and set percentages when it comes in regardless
 8   of who worked on the case?
 9        A.   No.
10        Q.   How much is anticipated on Mr. Beaton's
11   contingency fee case, if it actually gets to its best
12   result?
13        A.   The best result is a range of numbers.
14   The range of numbers could be as high as $100 million
15   dollars.  It could be 20 million.  It could be
16   nothing.  So the range is anywhere from zero to
17   $100 million or so.
18        Q.   Do you and Mr. Beaton have a specific
19   arrangement of how moneys from that case will be
20   distributed, if they ever come in?
21        A.   No, we don't.
22
23
24
25
```